Gregory D. DAHMER and Candi S. Dahmer, Plaintiffs–Appellants,

v.

Robert F. HUTCHISON, Defendant,

and

Consumers Insurance, Defendant–Respondent.

No. SD 29848.

Missouri Court of Appeals, Southern District, Division Two.

March 22, 2010.

Motion for Rehearing or Transfer Denied April 13, 2010.

James E. Corbett, David T. Tunnell, Matthew W. Corbett, Daniel P. Molloy, Springfield, MO, for Appellant.

Nikki Cannezzaro, Kansas City, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

Gregory D. and Candi S. Dahmer ("Appellants") obtained a judgment against Robert F. Hutchison ("Hutchison") in an action to recover damages for injuries Mr. Dahmer suffered as a result of an accident that occurred March 9, 2006, on Hutchison's property. Pursuant to section 379.200,[1] Appellants petitioned to collect insurance money, provided for in the contract of insurance between the insurance company, person, firm or association as described in section 379.195, and the defendant, applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the

---

1. All statutory references are to RSMo 2000, unless otherwise indicated. Section 379.200 reads in, pertinent part:

Upon the recovery of a final judgment against any person ... by any person ... for loss or damage on account of bodily injury or death, or damage to property if the defendant in such action was insured against said loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the

that judgment from Consumers Insurance ("Respondent"), who had issued an insurance policy to Hutchison. Respondent filed a counter-claim for declaratory judgment against Appellants seeking a declaration that Hutchison's policy does not afford coverage for the consent judgment against Hutchison, and filed a motion for summary judgment on the same ground. The motion court concluded that Hutchison's policy did not cover the claims arising out of the March 9, 2006 accident, that Respondent was not obligated to defend Hutchison against those claims, and that Respondent was not obligated to indemnify Hutchison for any judgment entered on those claims. Accordingly, the motion court granted summary judgment in favor of Respondent, which led to this appeal. We reverse and remand.

Hutchison was engaged in the business of restoring and selling used cars, and kept approximately 2,000 cars on his property, seventy-five percent of which were rolling chassis—meaning they had no engine or transmission. Mr. Dahmer knew Hutchison to be in the business of buying and selling old cars and, on March 9, 2006, Mr. Dahmer went to Hutchison's place of business to purchase a mid–1960s Chevrolet. Mr. Dahmer hoped to take the rear-end/differential from the mid–1960s Chevrolet and put it in a 1955 Chevrolet he was rebuilding. Hutchison had a rolling chassis that fit Mr. Dahmer's needs, and the two eventually agreed to a price between $100 and $135 for the differential. The parties did not determine whether or not Mr. Dahmer would return later to pick up the rest of the rolling chassis, but they agreed that Mr. Dahmer could take the differential in his Chevrolet S–10 pick-up that morning.

insurance money to the satisfaction of the judgment.

Hutchison used his tractor and a front-end loader to raise the rolling chassis off the ground, and then placed jack stands underneath it to secure it. After dropping the differential and moving it parallel to the rolling chassis, Hutchison returned to the tractor. As Hutchison attempted to position the front-end loader over the differential so he could attach it to the loader and lift it into the bed of Mr. Dahmer's S–10 pick-up, his foot slipped off the clutch, causing the tractor to lurch forward and the loader to strike Mr. Dahmer. Mr. Dahmer suffered a broken leg as a result, which required surgery. Appellants obtained a judgment in a negligence action against Hutchison, the collection of which is the subject of the present case.

Respondent had issued a general liability insurance policy to "ROBERT HUTCH-ISON, DBA BOB HUTCHISON USED CARS" that was in effect at the time of the accident injuring Mr. Dahmer. The policy indemnified Hutchison for liabilities up to $100,000 per accident and $300,000 total. The auto dealer policy's coverage is described in the "Garage Coverage Form," and is limited by the "LOCATIONS AND OPERATIONS EXCLUSION FORM," which reads as follows:

> Locations and Operations Not Covered:
> *Exclude Residence Premise Liability*
> *Exclude salvage operations & wrecker*
>
> ---
>
> The above listed location/operation or any liability claims or property damage claims resulting from the above listed location/operation are specifically excluded under the terms of this policy and Consumers Insurance would not be liable for these locations[/]operations.

Signature: /s/ Robert N. Hutchison

Date: 1–4–06

Section 379.200.

The trial court found that the term "salvage operation" was unambiguous, and that the transaction between Mr. Dahmer and Hutchison was a salvage operation not covered by the insurance policy, thus entitling Respondent to summary judgment. On appeal, Appellants argue that the transaction did not constitute a salvage operation excluded by the policy, or in the alternative that the judgment should be reversed because the term is ambiguous. Respondent concedes that Hutchison's primary business was not a salvage operation, but argues that the term "salvage operation" in the policy is unambiguous, and that the transaction between Hutchison and Mr. Dahmer was a salvage operation excluded from coverage by the policy.

Our review of the trial court's grant of summary judgment is de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The issue of whether an insurance policy is ambiguous is a question of law. *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007). A term is ambiguous if it is reasonably open to different constructions. *Seeck v. Geico General Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007). In determining whether a contract term is ambiguous, we interpret the term in the context of the contract as a whole. *Yerington v. La–Z–Boy, Inc.*, 124 S.W.3d 517, 520 (Mo.App. S.D.2004). It is well-established that an ambiguous contract term is construed against the insurer, so a court need not resort to extrinsic evidence offered to demonstrate the parties' intended meaning of the term. *Burns v. Smith*, 303 S.W.3d 505, 511–12 (Mo. banc 2010).

We find the phrase "Exclude Salvage operations & wrecker" to be reasonably open to different constructions, and therefore ambiguous. We first note that the term "salvage operations" is not defined in the contract. Given that Hutchison obtained an auto dealer policy, yet had roughly 1,500 rolling chassis in his pool, "salvage operations" does not indicate where the parties intended to draw the line between dealing "autos" and dealing salvaged parts. Were we to find the term "salvage operations" unambiguous, we would be forced to determine just how many parts must be connected together in a certain manner and sold as a single unit at a single time in order to qualify as the sale of an "auto" that is covered by the policy, as opposed to the sale of a salvaged part that is not. We decline to undertake that venture here.

Furthermore, the phrase "Exclude Salvage operations & wrecker" simply does not inform us whether the parties intended that Hutchison only be covered when selling an entire "auto" in a single transaction, or that he be covered when selling an entire "auto" even if a customer took it home piece by piece. While "salvage operations" could reasonably include a single transaction involving the sale of anything other than a whole car in a single transaction, it could also reasonably mean any operations in which Hutchison pulled useable parts off cars for resale, and then crushed the remainder to sell for scrap. Either interpretation is plausible under the common understanding of "salvage operations," but the latter would appear to provide coverage for the March 9, 2006 accident; the former would not. Given these reasonable alternative meanings, the phrase as used in the policy is ambiguous.

In addition, we note that the context of "salvage operations" casts doubt on its precise meaning. A case involving a similarly-oriented policy exclusion was addressed by our Supreme Court in *Burns v. Smith*, 303 S.W.3d 505, 511–12 (Mo. banc 2010), which we find instructive. There, the insurer argued that despite two cover-

age exclusion clauses numbered (1) and (2), the use of "and" in clause (1) really meant "or," so clause (1) should be read to operate as two distinct exclusions, which would have excluded coverage for the injury suffered by Burns.[2]  *Id.* at 510–11. The court held that reading clause (1) as two distinct exclusions would essentially be adding the number (3) to the definition to operate as a third exclusion, and refused to do so.  *Id.* at 510–11. The court also noted that while "and" can mean "or," its common meaning is "along with or together with,"[3] so accepting the insurer's argument would mean only that "and" can be ambiguous.  *Id.* The use of "and" requires both the first and second portion of a clause to "fulfill its common role needing all operands." *Id.*

Here, the "LOCATIONS AND OPERATIONS EXCLUSION FORM" provides three lines on which to handwrite excluded locations or operations.  Handwritten on the first line is "Exclude Residence Premise Liability," and handwritten on the second line is "Exclude Salvage operations & wrecker."  The third line is blank.  This arrangement tends to suggest that there are essentially two exceptions: one for accidents in or around the residence; and another for salvage operations and the wrecker.  The use of the conjunction "and," indicated by the use of the ampersand here, indicates that "salvage operations" is somehow linked to "wrecker" to form the second exclusion.  Had the dis-

junctive "or" been used, the phrase could be read to exclude liabilities stemming from either of the two.  However, the conjunctive phrasing that links "salvage operations" to "wrecker" raises the possibility that the parties intended to exclude from coverage activities involving the use of the wrecker *in* salvage operations.  We need not speculate as to whether this is correct,[4] as the ambiguity alone is the basis for reversal and must be construed against Respondent.

As the trial court noted, the phrase "salvage operations" must have meant something to the parties, but because of the ambiguous nature of "Exclude Salvage operations & wrecker," when read in the context of the whole policy, we find the policy exclusion ambiguous and reverse the summary judgment for Respondent.

The judgment is reversed and remanded for further proceedings consistent with this opinion.

LYNCH, P.J., BATES, J., concur.

---

**2.**  The exclusionary clause before the court read, "(1) **A trade, profession, or occupation,** excluding farming, and the use of any premises or portion of residence premises for any such purposes...." *Burns*, 303 S.W.3d at 510 (emphasis in original).  The insurer argued that the clause operated as two separate exclusions, one for injuries arising out of a trade, profession, or occupation of the insured, and a second for injuries arising out the use of any premises or portion of residence premises for such purposes.  *Id.*

**3.**  In arriving at this common meaning, the court cited WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED, MERRIAM WEBSTER 80 (1993), BLACK'S LAW DICTIONARY 86 (6th ed.1991), and WEBSTER'S NEW WORLD COLLEGE DICTIONARY, MERRIAM WEBSTER 51 (3d ed.1996).

**4.**  The wrecker was not used in the March 9, 2006 incident.